# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
NANCY BARCLAY, as the legal         *
representative of her minor son,    *
MATTHEW RAMIREZ,                    *       No. 07-605V
                                    *       Special Master Christian J. Moran
                Petitioner,         *
                                    *       Filed: February 7, 2014
v.                                  *
                                    *       Interim attorneys' fees and costs,
SECRETARY OF HEALTH                 *       reasonable hourly rate, reasonable
AND HUMAN SERVICES,                 *       number of hours, SCN1A case
                                    *
                Respondent.         *
* * * * * * * * * * * * * * * * * * * *
```

Curtis R. Webb, Twin Falls, ID, for petitioner;
Voris E. Johnson, Jr., United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION AWARDING
## ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]

    Nancy Barclay claims that a diphtheria tetanus acellular pertussis ("DTaP") vaccine affected her son Matthew Ramirez. Matthew was born with a mutation in his SCN1A gene. Ms. Barclay, specifically, alleges that the DTaP vaccine either caused Matthew to suffer a seizure disorder, or aggravated his seizure disorder. Ms. Barclay's claim for compensation remains pending.

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

Ms. Barclay has submitted an application for an award of attorney's fees and costs on an interim basis.  Petition for Interim Attorney Fees, filed Oct. 31, 2013, at 1.[2]  She seeks $183,709.44.  Id.   The Secretary opposed the amount requested. For the reasons that follow, Ms. Barclay is awarded $133,942.46.

## BACKGROUND

Ms. Barclay's case involves the SCN1A gene and is one of a series of cases involving that condition.  At least four other cases have involved the same genetic mutation.  Notably, Ms. Barclay's attorney represented the petitioners in Hammitt v.  Sec'y of Health & Human Servs., No. 07–170V.[3]  The events in Hammitt are mixed with the events in this case.

In June 2007, Mr. Webb began collecting Matthew's medical records.  He submitted the petition in August 2007.  Mr. Webb was also conferring with Dr. Marcel Kinsbourne.  Dr. Kinsbourne wrote a report, which Ms. Barclay filed on February 28, 2008, as exhibit 9.

In May 2008, the Secretary filed a report from Dr. Max Wiznitzer.  Dr. Wiznitzer learned about Matthew's problem by reviewing his medical records. Based upon that review Dr. Wiznitzer suggested that Matthew may have a genetic defect and recommended testing.   Matthew was tested and the test results showed a defect in his SCN1A gene.

Mr. Webb spent time learning about the SCN1A gene and conferring with Dr. Kinsbourne.  Mr. Webb also observed the October 2009 trial in the Harris and

---

[2] Mr. Webb's timesheets are attached to his affidavit that he filed with his Petition for Interim Attorney Fees.  Affidavit of Curtis Web, filed Oct. 31, 2013.

[3] Other SCN1A cases that have been litigated to judgment include: Stone v. Sec'y of Health & Human Servs., 690 F.3d 1380 (Fed. Cir. 2012); Snyder v. Sec'y of Health & Human Servs., No. 07-60V, 2011 WL 2446321 (Fed. Cl. Spec. Mstr. May 27, 2011), mot. for reviewed granted, 102 Fed. Cl. 305 (2011), reinstated on appeal, No. 2013-5068, slip op. (Fed. Cir. Jan. 28, 2014); Harris v. Sec'y of Health & Human Servs., No. 07-59V, 2011 WL 3022544 (Fed. Cl. Spec. Mstr. May 27, 2011), mot. for reviewed granted, 102 Fed. Cl. 282 (2011), reinstated on appeal, No. 2013-5072, slip op. (Fed. Cir. Jan. 28, 2014); Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d 1363 (Fed. Cir. 2013); and Barnette v. Sec'y of Health & Human Servs., 110 Fed. Cl. 34, 26 (2013).

Snyder cases during which Dr. Kinsbourne testified.  Ms. Barclay seeks compensation for Mr. Webb's attendance at the hearing in those cases.

Following the Harris and Snyder trial, Mr. Webb did relatively little work in Ms. Barclay's case for the remainder of 2009 and all of 2010.  During 2010, Mr. Webb was working on Hammitt by filing a motion for review.  In December 2010, Mr. Webb, as attorney for Ms. Barclay, requested that her case be stayed until the appeals in Hammitt and Stone were resolved.

For this period of time, which starts with the gathering of medical records and runs through the request for a stay, Ms. Barclay seeks compensation for approximately 140 hours of work by Mr. Webb.  As discussed below, the Secretary objected to the amount of time spent in this phase as excessive.  A particular objection is to compensating Mr. Webb for attending the Harris/Snyder trial.

As the Stone and Hammitt cases proceeded through levels of review (first at the Court of Federal Claims and then at the Federal Circuit), Ms. Barclay's case was relatively inactive.  In 2011, Mr. Webb spent approximately 42 hours, mostly reviewing medical literature on the SCN1A mutation.

In April 2012, the Federal Circuit affirmed the judgments denying petitioners compensation in Stone and Hammitt.  676 F.3d 1380 (Fed. Cir. 2012).  The Federal Circuit's decision prompted reactivation of Ms. Barclay's case.  On May 16, 2012, Ms. Barclay filed a report from a new pediatric neurologist, Dr. Jean-Ronel Corbier.  Exhibit 17.  Ms. Barclay filed a supplemental report from Dr. Corbier on July 13, 2012.  Exhibit 38.  The Secretary responded by filing reports from Dr. Wiznitzer and Dr. Gerald Raymond.  Exhibits I and K.  On December 17, 2012, this case was scheduled for a trial in conjunction with another case involving the SCN1A gene, Santini v. Sec'y of Health & Human Servs., No. 06-725V.  For Mr. Webb's activities in 2012, Ms. Barclay's requests compensation for his work, totaling approximately 90 hours.

In 2013, Mr. Webb prepared for the hearing.  Dr. Corbier submitted another supplemental report.  Exhibit 39.  Mr. Webb prepared a pre-trial brief, which was filed on April 4, 2013.  The hearing was held on June 5-6, 2013, in Charlotte, North Carolina.  Ms. Barclay submitted a post-hearing brief on September 25, 2013.  The submission of the post-hearing brief completed Ms. Barclay's fee application.  For Mr. Webb's work in 2013, Ms. Barclay requests compensation for Mr. Webb totaling approximately 243 hours.  She also requests compensation for all of Dr. Corbier's work.

Ms. Barclay submitted her motion seeking attorney's fees and costs on an interim basis on October 31, 2013. The Secretary disputed several aspects, which are discussed below. Resp't's Opp'n, filed November 18, 2013. Ms. Barclay, submitted a reply on November 27, 2013.

## STANDARDS FOR ADJUDICATION

Like other litigation allowing an award of attorneys' fees and costs, awards for attorneys' fees and costs in the Vaccine Program must be "reasonable." 42 U.S.C. § 300aa–15(e)(1). Reasonable attorneys' fees are determined using the lodestar method – "'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)).

Quoting a decision by the United States Supreme Court, the Federal Circuit has explained some of the limits on the number of hours for which compensation may be sought:

> The [trial forum] also should exclude from this initial fee calculation hours that were not "reasonably expended." . . . Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (emphasis in original) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983)).

Special masters are permitted to reduce the claimed number of hours to a reasonable number and they are not required to assess fee petitions on a line-by-line basis. Saxton, 3 F.3d at 1521 (approving the special master's elimination of

50 percent of the hours claimed); see also Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); Edgar v. Sec'y of Health & Human Servs., 32 Fed. Cl. 505 (1994) (affirming the special master's awarding only 58% of the numbers of hours for which compensation was sought). This approach is consistent with the Supreme Court's instruction that when awarding attorneys' fees, trial courts may use estimates to achieve "rough justice." Fox v. Vice, 563 U.S. ___, 131 S. Ct. 2205, 2216 (2011).

## ANALYSIS

### I.   Entitlement to Attorneys' Fees and Costs on an Interim Basis

Ms. Barclay is eligible for an award of attorneys' fees and costs if she establishes that her case is supported by good faith and reasonable basis. 42 U.S.C. § 300aa-15(e). The Secretary has not challenged either aspect. See Resp't's Opp'n at 4-5. In any event, at this posture, Dr. Corbier's report provides a reasonable basis to Ms. Barclay's claim for compensation. Thus, she is eligible for an award of attorneys' fees.

As a matter of discretion, special masters may award attorneys' fees on an interim basis. Avera, 518 F.3d at 1352. Here, the Secretary has chosen not to challenge Ms. Barclay's argument that she meets the special circumstances for an award on an interim basis. See Resp't's Opp'n at 4-5. Thus, the only dispute involves the amount of attorneys' fees and costs.

### II.   Reasonable Amount of Attorneys' Fees

As set forth in Avera, the lodestar formula used to determine an attorney's basic amount of compensation has two components: the reasonable hourly rate and the reasonable number of hours. Here, although there is a minor dispute about the hourly rate for Mr. Webb, the most significant disputes concern the number of hours.

### A.   Reasonable Hourly Rate

Ms. Barclay requests that Mr. Webb be compensated at a different hourly rate depending upon when Mr. Webb worked.  His work began in 2007, and the requested rate is $220.00 per hour.  For work performed in 2008 through 2010, the requested rate is $240.00 per hour.  The Secretary has not objected to these hourly rates.  See Resp't's Opp'n at 10.

For 2011, the requested hourly rate is $250.00 per hour, which is an increase of $10.00 per hour over the preceding year.  This same increment, $10.00 per hour, is used for 2012 and 2013.  The Secretary argues that Ms. Barclay has not justified the proposed increase from $240.00 in 2010 to $270.00 in 2013.  See Resp't's Opp'n at 10.

Each particular $10.00 increase constitutes an increase of approximately 4%.  As such, the increases appear to approximate the rate of inflation.  Consequently, the proposed rates are accepted as reasonable.

### B.   Reasonable Number of Hours

The recurring theme of respondent's objections concerns Mr. Webb's participation in other cases involving the SCN1A gene.  The Secretary primarily argues that Mr. Webb's previous work on Hammitt should have given Mr. Webb knowledge about the concepts involved in Ms. Barclay's case that would allow him to work efficiently.  The Secretary contends that Mr. Webb spent an unreasonable number of hours given his familiarity with the subject matter.

Overlap between work in the Hammitt case and Ms. Barclay's case began in the earliest stages of Ms. Barclay's case.  For example, in 2007 and 2008, Mr. Webb was spending time on activities for both Hammitt and Barclay.  On August 20-21, 2007, Mr. Webb spent time reviewing the translation of a Spanish article.  He has charged time in both Hammitt and Barclay for that work.  Similarly, in October 2007, December 2007, January 2008, April 2008, and May 2009, Mr. Webb has time entries in Barclay that are either very similar to or the same as entries in Hammitt.

Determining whether these entries are duplications is difficult.  For example, on December 3, 2007, Mr. Webb indicates that he spent 0.5 hours conferring with Dr. Kinsbourne in both Hammitt and Barclay.  Did Mr. Webb spend a total of 60 minutes with Dr. Kinsbourne and divide this time into two cases?  Or, did Mr.

Webb spend 30 minutes with Dr. Kinsbourne and charge to both cases? Another example occurred on May 23, 2008. On that date, in <u>Barclay</u>, Mr. Webb recorded one hour for "prepare case for Court: medical research – SCN1A." On the same date Mr. Webb recorded the same amount of time for the same activity in <u>Hammitt</u>. Did Mr. Webb spend a total of 120 minutes? Or did he spend a total of 60 minutes?

A more specific description of the activity could have eliminated the ambiguity. If the May 23, 2008 entry identified the research by the author's names, then the number of articles that Mr. Webb reviewed would be apparent. And, the number of articles would inform a determination about the reasonable amount of time for that review.

The vagueness in time entries is apparent in other places as well. For example, many entries state "review file; prepared case for Court; Status Conference." From the timesheets, it is difficult to understand whether Mr. Webb was spending a reasonable amount of time. In addition, as the Secretary noted, Mr. Webb was performing tasks such as preparing exhibits that an attorney should reasonably delegate to either a paralegal or an assistant. Generally, attorneys are not compensated at a relatively high hourly rate for performing tasks that could be performed by a person charging a less expensive rate. See <u>Valdez v. Sec'y of Health & Human Servs.</u>, 89 Fed. Cl. 415, 425 (2009) (finding special master acted within discretion in finding that obtaining medical records was a task for a paralegal); <u>Kosse v. Sec'y of Health & Human Servs.</u>, No. 90-930V, 1992 WL 26196, at *2 (Cl. Ct. Spec. Mstr. Jan. 30, 1992) ("It should be noted that Mr. Webb properly reduced the necessary attorney hours by employing paralegals to gather the medical records, essentially a clerical task. Vaccine cases do not always require the full application of a range of legal skills.").

For these reasons, the amount of compensation for Mr. Webb's work in 2007 will be reduced. Rather than the 40 hours of attorney time requested, Ms. Barclay will be awarded 27 hours of attorney's time plus 8 hours of paralegal time (at $100.00 per hour).

In 2008 through 2010, Mr. Webb has charged 102 hours. A bulk (44.5 hours) was incurred in traveling to, observing, and returning from the hearing in <u>Harris</u>/<u>Snyder</u>. As listed in footnote 3 above, <u>Harris</u>/<u>Snyder</u> was a combined hearing involving children with an SCN1A mutation.

The Secretary's objection to compensation for attending a trial in a different case is well founded. An attorney for a party to the litigation who only observes the trial is usually not compensated. Wells v. City of Chicago, 925 F.Supp.2d 1036, 1046 (N.D.Ill. 2013); White v. White Rose Food, 86 F.Supp.2d 77, 79-80 (E.D.N.Y. 2000), rev'd on other grounds, 237 F.3d 174 (2d Cir. 2001). In this case, Mr. Webb's attendance at the Harris/Snyder trial was even more attenuated because he did not represent a party at that hearing. Consequently, the time and costs associated with observation are removed. Instead, to confer with Ms. Chin-Caplan about what happened in the Harris/Snyder hearing, Mr. Webb will be compensated for four hours of time, which is a generous amount of discussion for a two-day hearing. A lengthy conference with the trial attorney would have probably provided Mr. Webb with nearly all the insights he gained by his in-person attendance at the hearing for a fraction of the cost. It is likely that a client paying for his services would have preferred this more efficient option.

For the remaining 57.5 hours, some adjustment is required to account for possible duplication with Hammitt, vagueness in entries, and paralegal work. For 2008 to 2010, Ms. Barclay will be compensated for 45 attorney hours and five paralegal hours.

In 2011, as noted above, Ms. Barclay's case was largely inactive while the Federal Circuit considered the appeals in Hammitt and Stone. Nevertheless, Mr. Webb spent approximately 40 hours during this year, primarily reviewing medical literature. This amount of time appears reasonable, although more specificity in describing the articles being reviewed would be helpful.

In 2012, substantive work in Ms. Barclay's case resumed. Mr. Webb was working with Dr. Corbier to obtain a report and was pursuing a geneticist by consulting an expert witness service. These activities are reasonable and compensable. The confounding problem is that Mr. Webb spent some amount of time reviewing medical literature and it is difficult to differentiate this work from his review of medical literature in other years. Dr. Corbier cited articles (such as those that Depienne, Gambardella, Lossin, and Oakley authored) with which Mr. Webb should have been familiar from his work in reviewing literature in this case. In addition, Mr. Webb also performed activities, such as filing documents, that a more junior (and less expensive) person could have performed.

Overall, these questionable activities account for only a small proportion of the approximately 90 hours claimed for 2012. Ms. Barclay is awarded

compensation for the majority of Mr. Webb's recorded time (80 hours of attorney time and three hours of paralegal time).

Before turning to 2013, which is the year for which there is the most dispute, it is worthwhile to review the award so far. For work performed from 2007 through 2012, Ms. Barclay is receiving compensation for nearly 200 hours of attorney time. These 200 hours were spent on gathering medical records, preparing pleadings, participating in status conferences, and retaining an expert. A very significant task for Mr. Webb was learning about the SCN1A mutation, either by reading medical articles, conferring with Dr. Kinsbourne, or speaking with Dr. Corbier. Two hundred hours of attorney time is an unusually high number of hours for a case in the Vaccine Program. But, this much time was reasonable due to the complexity of the topic.

From this baseline, Mr. Webb spent an additional 243.3 hours in 2013. Those 243 hours represent approximately 80 hours in continued work on expert reports, approximately 44 hours in writing a pretrial brief, approximately 44 hours in preparing for and participating in the hearing, and approximately 55 hours for writing one post-hearing brief.

For an attorney with Mr. Webb's background, these figures are not reasonable. An attorney may not combine relatively high hourly rates with a relatively large number of hours. A relatively high hourly rate is warranted when an attorney possesses knowledge and experience to work relatively quickly. But, if the attorney must spend relatively large amounts of time learning about the subject matter of the litigation, then the reason for the premium hourly rate is lost. See Broekelschen v. Sec'y of Health & Human Servs., No. 07-137V, 2011 WL 2531199, at *4 (Fed. Cl. Spec. Mstr. June 3, 2011) ("A consequence of [an experienced attorney's] high hourly rate is an expectation that [the attorney] works efficiently" and thus the time he or she "spends on certain tasks will be less than the amount of time a less experienced attorney would spend"), motion for review denied, 102 Fed. Cl. 719 (2011). While Ms. Barclay identifies some differences between her case and Hammitt, see Pet'r's Reply at 5, much of the material overlapped. For example, how a normal SCN1A gene contributes to the normal functioning of a normal sodium channel is a fundamental, if complicated, concept in both cases. In the experience of the undersigned, a reduction of 25% for activities in 2013 is commensurate with a reasonable award.

In total, a reasonable amount of attorneys' fees is $99,008.25. The Secretary has suggested that any award to Ms. Barclay should be comparable to awards made

in similar cases.  See Resp't's Opp'n at 7-8 (citing Broekelschen, 2011 WL 2531199, at *11).

Here, the best comparisons are other cases involving the SCN1A gene and of the cases involving the SCN1A gene, the most relevant is Hammitt.  Hammitt is particularly useful because Mr. Webb represented the petitioners in that case. Hammitt is also comparable because the petitioners' motion for an award of attorneys' fees on an interim basis occurred at a relatively similar point in the litigation.  There, the petitioners requested approximately $152,000.00 in attorneys' fees.  Of this amount, approximately $27,000.00 was associated with a motion for review, an activity that has not occurred in Ms. Barclay's case.  For the trial and motion for review stages in Hammitt, the special master awarded approximately $141,000.00 in attorneys' fees.  2011 WL 1827221 at *8.  While the attorneys' fees decision in Hammitt did not allocate particular amounts to activities before the special master or activities on the motion for review, the amount awarded in Hammitt was probably around the same amount as the amount awarded here.[4]

In Stone, the special master awarded approximately $89,000.00 in attorneys' fees on an interim basis.  Stone, No. 090-1041V, 2010 WL 3790297, at *9 (Fed. Cl. Spec. Mstr. Sept. 9, 2010).  The amount awarded to Ms. Barclay is similar.

Thus, the most comparable decisions awarding attorneys' fees in cases involving an SCN1A mutation have reached similar results.  The figures' relative closeness reinforces the finding of reasonableness for Ms. Barclay.

## C.    Reasonable Amount of Attorneys' Costs

In addition to seeking an award for her attorney's time, Ms. Barclay seeks an award for her attorney's costs.[5]  Requests for costs are evaluated by the same standard as the standard for an award for attorney's fees.  Costs must be "reasonable."  Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).  The fees for an expert are generally determined by multiplying a reasonable hourly rate by a reasonable number of hours.  See id.; see also Baker v. Sec'y of Health & Human Servs., No. 99-653,

---

[4] Although Ms. Barclay also cited to Hammitt as a comparable case, she did not recognize that the motion for interim fees in Hammitt included time for presenting a motion for review.  Pet'r's Reply at 6.

[5] Ms. Barclay did not incur any costs personally.

2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 25, 2005) (discussing factors considered to determine reasonable expert fees).

Here, Ms. Barclay seeks a total of $53,833.94 in costs.[6]  This amount includes: (1) $15,825 for Dr. Kinsbourne, (2) $32,520 for Dr. Corbier, and (3) $5,488.94 for miscellaneous expenses.  These issues are discussed in turn.

### 1.   Dr. Kinsbourne

Dr. Kinsbourne has testified on behalf of petitioners in many Vaccine Program cases.  His background has been set forth in many previous decisions. See, e.g., Hammitt v. Sec'y of Health & Human Servs., 2010 WL at 1848220, at *7-8 (Fed. Cl. Spec. Mstr. Apr. 15, 2010).

For his work performed in 2007 through 2012, Dr. Kinsbourne has charged $500.00 per hour.  The total number of hours is 31.65.  See Pet'r's Mot., tab B. The Secretary objects to both aspects.  See Resp't's Opp'n at 11.

Ms. Barclay has provided no support for compensating Dr. Kinsbourne at a rate of $500.00 per hour.  Although $500.00 per hour may be reasonable in cases in which Dr. Kinsbourne's expertise comes into play, Dr. Kinsbourne stopped practicing pediatric neurology before the SCN1A gene mutation was discovered. See Harris, 2011 WL 2446321, at *21. When the vaccinee has an SCN1A gene mutation, Dr. Kinsbourne has been compensated at a rate of $300.00 per hour.  Id. at *7; Stone, 2010 WL 3790297, at *6-7.  Ms. Barclay has not presented any persuasive reason for a different result here.

For the number of hours, there is an adequate basis for compensating Dr. Kinsbourne for all the work he performed.  Although the Secretary challenged Dr. Kinsbourne's continued participation after Matthew's SCN1A gene mutation was discovered, Mr. Webb's consultation with a neurologist who is knowledgeable about the Vaccine Program in a complex case is reasonable.  See Pet'r's Reply at 10.

Consequently, Dr. Kinsbourne will be compensated at a rate of $300.00 per hour for 31.65 hours.  The total is $9,495.00.  This is a reduction of $6,330.00 from the amount requested for Dr. Kinsbourne.

---

[6] Ms. Barclay's fee application contains a math error.

11

## 2.    Dr. Corbier

Dr. Corbier has been board-certified in neurology with a special qualification in child neurology since 2002.  He works with other pediatric neurologists in a private office serving clients near Charlotte, North Carolina.  Exhibit 18 (curriculum vitae).  He has conducted very little research and his publications are self-published books, which were not peer-reviewed.  Beyond his training as a neurologist, he does not have any special expertise in genetics.  His professional duties do not focus on teaching medical school students.  Tr. 91-92.

For his work in 2012 and 2013, Dr. Corbier has charged $400.00 per hour.  He spent 81.3 hours working on this case.  See Pet'r's Mot., tab C.[7]

The Secretary objected to Dr. Corbier's requested hourly rate, suggesting that a reasonable rate for a doctor with Dr. Corbier's experience is $300.00 per hour.  The Secretary also objected to the number of hours Dr. Corbier charged, but did not propose a reasonable number of hours.

After this objection, Ms. Barclay submitted an affidavit from Mr. Webb.  Mr. Webb states that nephrologists, gastroenterologists, and immunologists, whom he did not identify by name, have told him that their hourly rates were at least $565.00 per hour.  In addition to being second-hand, the information is not particularly valuable.  The more relevant data is the prevailing hourly rate for pediatric neurologists in Charlotte, North Carolina.  Mr. Webb came a bit closer to providing this information when he also averred that Dr. Corbier has told him that his normal charge is $500.00 per hour, but he has accepted $400.00 per hour in a different Vaccine Program case.[8]  An affidavit from Dr. Corbier would have been a better source.  See Raney v. Fed. Bureau of Prisons, 222 F.3d 927, 938 (Fed. Cir. 2000) (en banc) (stating "something more than an attorney's own affidavit is required to establish the prevailing rate for attorney's fees" and citing Blum, 465 U.S. at 895 n.11).

---

[7] Dr. Corbier's invoice would be more informative if he specified medical literature he was reviewing by the name of the authors.

[8] Mr. Webb also discusses negotiations to resolve Dr. Corbier's hourly rate.  But, as these discussions were part of an attempt to settle a dispute, they should not have been presented as evidence.  See LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 77 (Fed. Cir. 2012) (holding district court erred in admitting settlement agreement into evidence).

In the absence of persuasive evidence from Ms. Barclay, a starting point is the $300.00 per hour awarded to Dr. Kinsbourne in <u>Hammitt</u>.  Although the special master issued <u>Hammitt</u> in 2011, Dr. Kinsbourne was being paid for work performed in 2007-09.  Although $300.00 per hour was a reasonable rate then, it should be adjusted for inflation to be used now.  An inflation-adjusted rate is $325.00 per hour for 2013.  This rate is in accord with the undersigned's experience.  <u>See</u> <u>Saxton</u>, 3 F.3d at 1521.[9]

As for the reasonable number of hours, the Secretary argues that 81.3 hours is "excessive."  Dr. Corbier did not describe his activities with much specificity.  Two broad categories "medical literature and patient chart review" and "preparation of legal report and additional medical literature review" encompass more than 50 hours of work.  These vague descriptions do not permit an assessment of the reasonableness of the time being spent.  <u>See</u> <u>Caves v. Sec'y of Health & Human Servs.</u>, 111 Fed. Cl. 774, 780-81 (2013).

Due to the vagueness in Dr. Corbier's invoice, the undersigned will determine a reasonable amount of time based upon experience in reviewing other cases.  <u>See</u> <u>Saxton</u>, 3 F.3d at 1521; <u>Morse v. Sec'y of Health & Human Servs.</u>, 89 Fed. Cl. 683, 688-89 (2009) (affirming special master's decision to reduce expert fees because, among other things, expert's invoice "did not include a breakdown of hours per task").  A reasonable amount of time is 65 hours.

The award for Dr. Corbier is $21,125.00.  This represents a reduction of $11,395.00.

### 3.    Miscellaneous items

Of the $5,488.94 of miscellaneous expenses, the Secretary has objected to only one item.  The item is the cost associated with Mr. Webb's travel to observe the <u>Harris</u>/<u>Snyder</u> hearing.  Because a paying client would not incur the cost of having an attorney simply observe a hearing, this cost is unreasonable.  Thus, the $1,174.73 in travel costs is removed.

---

[9] In future cases, if petitioners were to submit documentation supporting a higher hourly rate for Dr. Corbier, the undersigned would reconsider the appropriate hourly rate based upon that evidence.

###     4.      Summary of costs

This table presents the mathematical calculations:

| Item | Amount |
|------|--------|
| Amount Requested in Fee Application | $53,833.94 |
| Reduction for Dr. Kinsbourne | -$6,330.00 |
| Reduction for Dr. Corbier | -$11,395.00 |
| Reduction for Travel | -$1,174.73 |
| TOTAL | $34,934.21 |

Ms. Barclay has established that a reasonable award of costs is $34,934.21.

## CONCLUSION

For the foregoing reasons, Ms. Barclay is awarded $133,942.46 in interim attorneys' fees and costs.  The special master determines that there is no just reason to delay the entry of judgment on these interim attorneys' fees and costs.

Therefore, in the absence of a motion for review filed under RCFC Appendix B, the Clerk shall enter judgment in petitioner's favor for $133,942.46 in interim attorneys' fees and costs.  This amount shall be paid as a lump sum in the form of a check payable to petitioner and petitioner's attorney, Curtis R. Webb, for attorneys' fees and costs available under 42 U.S.C. § 300aa-15(e).  Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing the right to seek review.

**IT IS SO ORDERED.**

s/ Christian J. Moran
Christian J. Moran
Special Master